HEARD NOVEMBER TERM, 1872.

## ALSTON *vs.* ALSTON.

Evidence that the parties to a lost mortgage of five plantations, executed in 1854, resided in the District where the lands lie, and that the office of the Register of Mesne Conveyance of the District, with its books and records, was destroyed by fire in 1865, with other slight circumstances, fortified by the maxim *omnia presumuntur esse rite acta: Held*, In a contest with a junior mortgagee of one of the plantations, to sustain the conclusion of a Referee and the Circuit Judge, that the lost mortgage had been duly recorded.

BEFORE CARPENTER, J., AT CHARLESTON, APRIL TERM, 1870.

On June 10, 1854, William Algernon Alston, Sr., conveyed to his son Joseph Alston five plantations in Georgetown District, one of which was called Calais, and to secure the payment of the purchase money, $100,000, Joseph Alston and his wife, Helen Alston, gave to the vendor their bond and mortgage of the plantations, bearing the same date.

On April 11, 1856, Joseph Alston gave to Joseph Thurston his bond, conditioned for the payment of $8,000 with a mortgage of Calais to secure its payment.

On March 16, 1858, Joseph Alston conveyed to his son, W. A. Alston, Jr., the five plantations, the deed of conveyance stating that they were subject to the mortgage to William Algernon Alston, Sr., and W. A. Alston, Jr., who joined in the deed, covenanted to assume upon himself and pay the debt to William Algernon Alston, Sr., and also other debts of Joseph Alston, whether secured by mortgage of the plantations or otherwise.

William Algernon Alston, Sr., died about the year 1860. W. A. Alston, Jr., also died, and after the death of the latter, proceedings were commenced against his executors and devisees by the executors of William Algernon Alston, Sr., for foreclosure of the mortgage of June 10, 1854. Under these proceedings the five mortgaged plantations were sold to a purchaser who paid part of the money in cash and gave bond and mortgage for the balance. The procedure for foreclosure was connected with a bill which had been filed for construction of the will and settlement of the estate of William Algernon Alston, Sr., and after the sale for foreclosure Richard Lathers, as executor of Joseph Thurston, deceased, came in by petition, and having proved the mortgage given by Joseph Alston to his testator, claimed to be first paid out of the proceeds of the sale of Calais, on the ground, as he contended, that the

mortgage to William Algernon Alston, Sr., had never been recorded.

The case was referred to a Referee, and so much of his report as relates to the question made by the petition of Lathers is as follows:

"It has been already stated that of the five plantations mortgaged by Joseph Alston and Helen Alston to secure the payment of the bond for $100,000, one was known by the name of Calais. This mortgage was duly executed 10th June, 1854.

"A mortgage of Calais was executed by Joseph Alston to Joseph Thurston, 11th April, 1856, to secure a bond of same date, originally conditioned for the payment of $8,000.

"This bond and mortgage were produced in evidence; the latter recorded in the proper office at Georgetown, on 16th April, 1856, and re-registered at same office, on 16th April, 1867.

"There is no direct proof of the recording of the mortgage of Joseph Alston and Helen Alston to William Algernon Alston, nor could direct proof have been expected under the state of facts already adverted to in relation to this instrument. But the circumstances, from which it is submitted that the Court would infer that the mortgage was duly recorded, are, among others, the following:

"1st. That the parties all resided in the same District; that the causalties of war have destroyed the usual and direct proof on this subject. The offices and records were destroyed in March, 1865.

"2d. That there is proved registry of a mortgage of slaves to W. A. Alston, Senior, by W. A. Alston, Junior, dated 30th March, 1858, which mortgage was given as collateral security (among other things) for the amount then due on the bond and mortgage of W. A. Alston by Joseph Alston and Helen Alston, which bond and mortgage had been assumed by W. A. Alston, Junior. It was expressly provided in the mortgage of slaves that the slaves were not to be liable until the lands covered by the other mortgage had been sold and failed to realize the amount due.

"A certified copy of this mortgage, from the registry of the Secretary of State, was produced before me, and is marked Ex. C.

"3d. There is extreme improbability that in a transaction of this magnitude this ordinary precaution would have been neglected even by a simple unlettered person; but, superadded to this, it was proved by Mr. Alexander Robinson that the bond and mortgage were prepared in Mr. Petigru's office, and that there was the great-

est precision in the business conducted between them, as the father never did business directly with his son. Mr. Petigru represented both parties. The bond was given for the purchase money; and it also appears by the professional bill of Messrs. Petigru & King against W. A. Alston, receipted by the firm 21st June, 1854, that there are charges on—

"18th May, 1854, for drawing and engrossing conveyance of five plantations; and

"18th May, 1854, for drawing and engrossing mortgage of the same, special; and

"18th May, 1854, for drawing and engrossing bond for purchase money, etc.; and

"10th June, 1864, 'attending you and Col. Joseph Alston, and seeing papers properly executed.'

" On the other hand, it was proved by Mr. Richard Lathers that he was intimate with Mr. Joseph Thurston for very many years; that the bond by Joseph Alston to Joseph Thurston was in witness' possession for some time; that he saw to the last payment thereon through Mr. Dukes, the agent of Joseph Alston, in New York; that Mr. Thurston considered it a good investment and well secured; that Mr. Thurston was a man of great prudence in his affairs; that witness never knew him to take a second mortgage; that Mr. Thurston took unusual care in all his investments, and that, in business, it was his advice never to take any but the best security.

" The Referee has attentively weighed all the circumstances, and the strong conviction on his mind is that the mortgage to William A. Alston was duly recorded, and prior to that executed to Joseph Thurston, and that Mr. Thurston, although aware of the existence of the mortgage, probably relied on the ample security of the other mortgaged plantations to secure the principal debt.

"He therefore recommends that the mortgage to William A. Alston be recognized as the prior lien upon Calais plantation."

The decree of the Circuit Court is as follows:

Hearing the report of A. H. Dunkin, Esq., Special Referee, of date 26th February, 1870, and counsel having been heard thereon, it is ordered that the exceptions filed in behalf of Richard Lathers, Esq., executor of Joseph Thurston, to said report, be overruled, and that in this and every other respect the report be confirmed and made the judgment of the Court.

The petitioner, Lathers, appealed on the grounds:

First. Because the executors of W. A. Alston, not having produced the original mortgage, with endorsement of record thereon, nor an authenticated copy of such record, and having failed to show, by competent evidence, that such mortgage was ever recorded, and having also failed to establish a sufficient ground upon which to raise a legal presumption of the registry of such mortgage, the mortgage of Joseph Alston to Joseph Thurston on said plantation, the original of which is produced in evidence, with date of record endorsed thereon, is entitled to legal priority of lien.

Second. Because the executors of W. A. Alston, to establish their claim as against the original recorded mortgage of Joseph Thurston, produced in evidence, were required to show not only the fact of the said registry prior to the mortgage of Joseph Thurston, but also that such prior mortgage was a subsisting unreleased lien as against the plantation covered by the mortgage of Joseph Thurston at the time such last named mortgage was made and recorded, all of which they have failed to do.

Third. Because the executors of W. A. Alston neglected to take advantage of the provisions of the Act of the Legislature of said State, prescribing a means by which the lien of papers lost during the war might be preserved, and omitted altogether to record their alleged mortgage.

Fourth. Because the decree of His Honor the Circuit Judge is contrary to law and the evidence.

*Rutledge & Young*, for appellant.

*DeSaussure, McCrady, Simons & Simons*, contra.

March 14, 1873. The opinion of the Court was delivered by

MOSES, C. J. The brief in this case has been completed since the last session of the Court. The consideration of the argument, submitted in printed form, was, therefore, necessarily deferred to the present term.

The concurrence of the Circuit Judge in the conclusion of the Referee, giving a preference to the mortgage of the plantation "Calais," executed in 1854 by Joseph Alston to his father William Algernon Alston, Sr., over that of April, 1856, to Joseph Thurston, by the same party, might be sustained as decisive of the case if the question involved was to be determined as one of fact only.—*Blackwell* vs. *Searles*, 1 S. C., 116.

In the absence of that positive proof which is attained through the medium of evidence of actual facts from the lips of credible witnesses, a resort is often had to inferences or deductions from circumstances which generally attend a transaction of the same kind, and from these a presumption arises which prevails until "actual certainty of the truth or falsehood of any proposition can be attained." Presumptions of *law* must command belief until the impression is removed by countervailing positive proof. Presump- ·tions of *fact* receive their force from the customs and habits of society. What men commonly do under an existing state of circumstances it is presumed all others in the like condition will do, and the results which are found to follow a particular act may be expected to succeed its repetition.

The case before us cannot be adjudged by an application of the rules which govern either conclusions conceded as presumptions of law or results accepted as presumptions of fact. It depends on the application of principles appropriate to both, or, in the language of the writers, to " presumptions of fact recognized by law."

The execution of the mortgage to William A. Alston, Sr., if not admitted, has certainly been proved, and may be accepted as an established fact in the case. To give validity to a mortgage, neither recording or any other means of notice is necessary. It stands as a valid instrument between the parties, and it is only where the rights of third persons are protected by Statute against it that its efficacy as a subsisting lien is at all liable to objection. By our Statute of 19th December, 1843, 11 Stat., 256, " No mortgage of real estate shall be valid so as to affect the rights of subsequent creditors or purchasers for a valuable consideration without notice, unless recorded in the office of Register of Mesne Conveyance for the District wherein such real estate lies within sixty days from the execution thereof." It is through the effect of this provision that the appellant, Richard Lathers, as executor of Thurston, claims that he has a title superior to that created by the senior mortgage. The instrument itself, as also the Register's office, where it is alleged it was recorded, together with the records thereof, have all been destroyed, and the enquiry first arises whether the facts proved in the cause make a *prima facie* impression in favor of the appellee, which must be overcome by the appellant before his motion can prevail. The testimony, which would have been of the highest character, is beyond human reach,

and resort can alone be had to those presumptions which, if they are sufficient to command belief, must avail as the best testimony which it is in the power of the party to produce.

All of the maxims of the common law, universally recognized wherever it prevails, as founded in wisdom and justice, and in perfect harmony with the great principles which give symmetry and vigor to the whole system, are interposed in the argument against the motion. " *Omnia presumuntur rite et solemniter esse acta donec probetur in contrarium*," is claimed as shifting the burthen of . proof on him who avers against the conclusion which it announces. Mr. *Best*, in his Treatise on Presumptions of Law and Fact, p. 84, says : " So collateral facts, requisite to give validity to instruments, will, in general, be presumed." Mr. *Broom*, in his Legal Maxims, p. 429, remarks : " That the presumption *omnia rite esse acta* applies also to the acts of private individuals, especially when they are of a formal character, as writings under seal."

The effect of this rule, connected with the presumption that men are influenced in their conduct by their own interests, changes the course of proof, and throws on the other side the necessity of shewing the want of formalities, through the absence of which it claims a priority for the junior mortgage on which it relies for a precedent lien. The execution of the senior mortgage is proved—its foreclosure has not been resisted by those having an interest in defeating it. The junior mortgagee then interposes, and claims priority, because he alleges that the first mortgage was never recorded, and is, therefore, void against him, a subsequent creditor without notice. The averment seeks to avoid an instrument valid and subsisting between the parties, and he who is to be benefited, by reason of any want of conformity to the law, should not complain if he is asked to shew it. He is not required to prove a negative. He is only asked to sustain the allegation, which he contends vitiates and destroys, as to him, the instrument which is valid and effective between the immediate parties to it.

*Doe* vs. *Griffin*, 3 Camp., 7, is a case in point. Ejectment for leasehold premises, upon the assignment of a term by the defendant to the lessor of the plaintiff, to secure the payment of an annuity. It was insisted for the defendant that the lessor of the plaintiff was bound to prove that the annuity had been duly enrolled in pursuance of 17 Geo., 3 C., 26, as the assignment and all the annuity deeds were otherwise null and void. Lord *Ellenborough* said : " If

the annuity was not duly enrolled, that proof should come from the other side.   Here is an assignment, executed by the defendant.   I will presume it to be valid until the contrary be shewn."   The principle, thus laid down, may well be applied here.   On the trial, however, the *onus* was assumed by the appellees of showing, by circumstances, in the absence of the written proof, which had been destroyed, that the senior mortgage had been recorded.   It is true they were of a character to raise a presumption only sufficient to require contradicting testimony from the other side, which it failed to produce.   The conclusion to which the Circuit Court arrived may not be absolutely certain, but we do not see such error as would justify our interference.

The motion is dismissed.

*Willard,* A. J., and *Wright,* A. J., concurred.